d

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL DOCKET NO. 1:20-CR-00066 |
| VERSUS | DISTRICT JUDGE DRELL |
| ARCHIE LOUIS CARTER, ET AL. | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Co-defendants Archie Louis Carter ("Carter") and Isiah Charles Jones ("Jones") filed several Motions to Suppress Evidence. ECF Nos. 65, 66, 67. Because the evidence at issue in each motion was lawfully seized, Defendants' Motions to Suppress (ECF Nos. 65, 66, 67) should be DENIED.

### I. Background

Carter and Jones are charged in the United States District Court for the Western District of Louisiana with possession of methamphetamine, heroin, ecstasy, and cocaine with intent to distribute. ECF No. 113. Additionally, Carter is charged with possession of a firearm by a convicted felon, and there is a forfeiture allegation as to that firearm. ECF No. 13.

Jones filed a Motion to Suppress Evidence and Requesting an Evidentiary Hearing, contesting the stop and search of the vehicle in which he was a passenger on February 15, 2020. ECF No. 65. Carter filed two Motions to Suppress and Requesting an Evidentiary Hearing, contending the warrantless stops and searches of his vehicle that took place on October 29, 2019 and February 15, 2020, and the

search of his vehicle pursuant to a warrant on February 17, 2020, were all unlawful and the evidence seized should be suppressed. ECF Nos. 66, 67, 68, 80.

The Government opposes those motions. ECF No. 78.

The Court has repeatedly offered dates for potential evidentiary hearings. None were accepted or pursued by Defendants. Moreover, the issues presented in the motions are primarily issues of law. Meanwhile trial is rapidly approaching. And a hearing is neither required nor warranted here.[1] Additional delay is unnecessary. Defendants' Motions for an Evidentiary Hearing are denied. ECF Nos. 65, 66, 67.

---

[1] An evidentiary hearing is required on a motion to suppress "only when necessary to receive evidence on an issue of fact." *United States v. Harrelson,* 705 F.2d 733, 737 (5th Cir. 1983). Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief. *See Harrelson*, 705 F.2d at 737 (*citing United States v. Smith,* 546 F.2d 1275 (5th Cir. 1977); *United States v. Poe,* 462 F.2d 195, 197 (5th Cir.1972), *cert. denied,* 414 U.S. 845 (1973); *see also United States v. Alfaro*, 638 Fed. Appx. 374, 375 (5th Cir. 2016), cert. den., 136 S. Ct. 2530 (U.S. 2016); *United States v. Seymour*, 101 Fed. Appx. 967, 968 (5th Cir. 2004); *United States v. Zenon*, 29 F.3d 624, at *4 (5th Cir. 1994), cert. den., 513 U.S. 1049 (1994).

Factual allegations set forth in a defendant's motion, including any accompanying affidavits, must be "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *See Harrelson*, 705 F.2d at 737 (*citing Poe,* 462 F.2d at 197). General or conclusionary assertions, founded upon mere suspicion or conjecture, will not suffice. *See Harrelson*, 705 F.2d at 737 (*citing* 3 C. Wright, Federal Practice and Procedure: Criminal 2d, § 675 (1982)); *see also United States v. Hinojosa*, 392 Fed. Appx. 260, 261 (5th Cir. 2010). Inherent in these flexible guidelines is a judicial recognition that "the determination of whether a hearing is required [on a motion to suppress] is necessarily dependent upon the particular facts which attend a particular request, and the district court is properly left with a certain amount of discretion in this regard." *See Harrelson*, 705 F.2d at 737.

II. <u>Law and Analysis</u>

A. <u>Standards governing the Motion to Suppress.</u>

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. Defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights. *See United States v. Kelly*, 981 F.2d 1464, 1467 (5th Cir. 1993), *cert. den.*, 508 U.S. 944 (1993). However, the Government bears the ultimate burden of proving the search was valid when the search was conducted without a warrant. *See United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). Generally, "[t]he government may not use evidence obtained in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures to prove a defendant's guilt at trial." *United States v. Breland*, 53 F.3d 100, 102 (5th Cir. 1995).

B. <u>The October 29, 2019 stop and search were lawful.</u>

Carter contends his vehicle was unlawfully stopped and searched without a warrant on October 29, 2019. ECF No. 67. Carter argues: (1) the officer did not have a legal reason to initiate a traffic stop; (2) the officer did not have a legal reason for a warrantless search of his vehicle; and (3) the length of Carter's detention between the initial stop and the search was illegal and voided the search.

3

For the reasons given below, Carter's Motion to Suppress the evidence obtained from the October 2019 stop should be denied.

1. <u>**The initial stop of Carter's vehicle was reasonable.**</u>

Carter contends the officer's allegations that Carter's vehicle "drifted over the center line on at least 2 occasions" and "was following too closely to the vehicle in front of him" were pretextual. Carter further argues the officer used "cookie cutter" reasons for suspecting illegal activity that formed the basis of the warrantless search. ECF No. 67 at 1.

The Government contends Carter's vehicle was stopped because he changed lanes twice without signaling, and was following an 18-wheel truck too closely for safety. ECF No. 78 at 2.

The Fourth Amendment to the United States Constitution provides that the Federal Government shall not violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. The Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officers. *See Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995) (*citing Elkins v. United States,* 364 U.S. 206, 213 (1960)).

"The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in *Terry v. Ohio,* 392 U.S. 1 (1968)." *See United States v. Rosales–Giron,* 592 Fed. Appx. 246, at *4 (5th Cir. 2014). Under *Terry,* a court determines the

4

reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception; and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop. *See id.*

For a traffic stop to be justified at its inception, an officer need only have reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez–Moreno,* 420 F.3d 420, 430 (5th Cir. 2005), *cert. den.,* 546 U.S. 1222 (2006). The Supreme Court stated in *Whren v. United States,* 517 U.S. 806, 810 (1996): "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *United States v. Zavala,* 541 F.3d 562, 575 (5th Cir. 2008).

"Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *Zavala,* 541 F.3d at 575. Therefore, probable cause to make a traffic stop exists when a defendant commits a traffic violation and a law-enforcement officer observes the violation. *See United States v. Khanalizadeh,* 493 F.3d 479, 482 (5th Cir. 2007), *cert. den.,* 552 U.S. 1051 (2007). "The rule established by the Supreme Court in *Whren* allows officers to justify a stop by the occurrence of a traffic violation even though this is not the real reason for the stop." *United*

5

*States v. Cole,* 444 F.3d 688, 689 (5th Cir. 2006); *see Whren,* 517 U.S. at 813 (the constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved).

According to Carter, the officer observed Carter's vehicle drifting over the center line twice, and following the vehicle on front of him too closely. Both are traffic offenses in Louisiana. *See* La. R.S. 32:79 (driving on roadway laned for traffic); La. R.S. 32:81 (Following vehicles); La. R.S. 32:82 (driving on divided highways). Because the officer had probable cause to believe Carter had committed traffic offenses, the traffic stop was reasonable. *Compare United State v. Garcia*, 2015 WL 8660838, at *4 (W.D. La. 2015), *report and recommendation adopted,* 2015 WL 8675937 (W.D. La. 2015) (officer has probable cause to stop a vehicle that drifted over the center line and followed too closely behind the vehicle in front of it).

### 2. The length of Carter's detention was not unconstitutional.

Carter also argues the length of his detention between the initial stop and the search exceeded the time necessary to complete the traffic stop.

For the second prong of the *Terry* inquiry, generally, the detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges. *See United States v. Johns*, 2013 WL 4587744, at *3 (W.D. La. 2013), *appeal dismissed,* 586 Fed. Appx. 163 (5th Cir. 2014), *cert. den.*, 576 U.S. 1042 (2015) (*citing United States v. Brigham,* 382 F.3d 500, 507 (5th Cir. 2004). In the course of effectuating a

6

stop, an officer may permissibly examine the driver's license and registration and run a computer check to investigate whether the driver has any outstanding warrants or if the vehicle is stolen. *See Brigham,* 382 F.3d at 507. An officer may also ask the driver about the purpose and itinerary of his trip. *See id.* Indeed, the officer's questions need not even be related to the purpose of the traffic stop, since "[d]etention, not questioning, is the evil at which *Terry's* second prong is aimed." *See id.*[2]

Although an officer's inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention. *See Johns*, 2013 WL 4587744, at *3 (*citing Brigham,* 382 F.3d at 510; *Santiago,* 310 F.3d 336, 341–42 (5th Cir. 2002)). A recognized exception to this rule is that, if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed. *See Johns*, 2013 WL 4587744, at *3 (*citing Brigham,* 382 F.3d at 507; *United States v. Grant,* 349 F.3d 192, 196 (5th Cir. 2003); *United States v. Jenson,* 462 F.3d 399, 404 (5th Cir. 2006)). But "[o]nce the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end

---

[2] The Fourth Amendment also permits a police officer to undertake similar questioning of the vehicle's occupants to verify the information provided by the driver. *See Brigham,* 382 F.3d at 507.

unless there is additional reasonable suspicion supported by articulable facts." *United States v. Gonzalez,* 328 F.3d 755, 758 (5th Cir. 2003).

Carter does not allege how long he was detained prior to the K-9 open-air sniff of the exterior of his vehicle. It does not appear, from the facts provided by the parties' briefs, to have been an extended detention. No delays are alleged. When the officer stopped Carter and advised him of the traffic offenses he had observed, the officer checked the rental agreement on the vehicle, which took the passenger, Kendal Thompson ("Thompson"), a little time to locate. The officer also asked Carter and Thompson questions about their travel plans, then asked more questions when their answers about where they had been and where they were going were inconsistent. The officer noted Thompson's shaking hands and difficulty responding to the questions.

Because of those articulable factors, the officer asked Carter if he could search the vehicle. Although Carter gave verbal consent to a search of his vehicle, an open air sniff and alert by the K-9 (which was present at the scene) established probable cause to search. The Government contends the records check with dispatch did not come back until after Carter gave verbal consent to the search. That consent appears to have been immediately followed by the K-9 open-air sniff. These facts and allegations do not describe a detention that extended beyond the original traffic stop.

8

Because there is nothing set forth in the facts alleged by both parties that shows Carter's detention was lengthy or extended beyond the original stop until the K-9 sniff-search took place, the subsequent search of the vehicle is not "void" due to the length of the stop and detention. *Compare United States v. Davis*, 2007 WL 1125763, at *4–6 (E.D. La. 2007).

### 3. There was probable cause to search Carter's vehicle.

According to the Government, when the Officer asked Carter if he would consent to a search of his vehicle, Carter gave verbal permission for the search but did not sign the consent to search form. Carter advised the officer that he could not read. ECF No. 79 at 5. The officer then had a K-9 perform an open-air sniff of the vehicle. The K-9 gave a positive alert. ECF No. 79 at 5.

Carter does not admit in his brief that he gave verbal consent to search, but does admit the K-9 alerted on sniffing his vehicle.

The Fourth Amendment prohibition against unreasonable searches and seizures extends to vehicle stops and temporary detainment of a vehicle's occupants. *See United States v. Duffaut*, 314 F.3d 203, 208 (5th Cir. 2002) (citing *United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993)). Once a canine has alerted to the presence of narcotics, agents have sufficient probable cause to search a vehicle. *See Duffaut*, 314 F.3d at 208 (*citing United States v. Seals*, 987 F.2d 1102, 1106–07 (5th Cir. 1993), *cert. den.*, 510 U.S. 853 (1993); *United States v. Dovali–Avila*, 895 F.2d 206, 207 (5th Cir. 1990)).

Carter admits in his brief that an open air sniff using a K-9 officer was conducted, and that the dog returned a positive alert for narcotics. The search of Carter's vehicle was then conducted.[3] ECF No. 67 at 2. Thus, Carter's consent to search the vehicle was not required. *See Duffaut*, 314 F.3d at 208; *see also United States v. Benavides,* 291 Fed. Appx. 603, 610 (5th Cir. 2008).

Because there was probable cause to search Carter's vehicle, the October 2019 search was valid. Therefore, Carter's Second Motion to Suppress (ECF No. 67) should be DENIED.

### C. The February 15, 2020 stop and search were lawful.

Carter and Jones contend they were unlawfully stopped and their vehicle was unconstitutionally searched on February 15, 2020. ECF No. 66. Carter and Jones argue that Carter's vehicle was unlawfully stopped because officers "pinged" his cell phone to obtain its real-time location.

In *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (U.S. 2018), the United States Supreme Court held that an individual has a legitimate expectation of privacy in the record of his physical movements as captured through cell-site location information ("CSLI"), regardless of whether the Government employs its

---

[3] The search revealed a Glock 27, 40 caliber firearm, $4,501 in Carter's right pants pocket, and $6,205 in Carter's left pants pocket. ECF No. 67 at 2. Additionally, a THC vape pen was found on the passenger, Kendal Thompson ("Thompson"), and 4 grams of marijuana were found in the rear seat of the patrol car occupied by Thompson. ECF No. 67 at 2. Also found were a vacuum sealing machine, vacuum seal bags, and a roll of packing tape. ECF No. 67 at 2.

own surveillance technology or leverages the technology of a wireless carrier. Thus, the Government's acquisition of the cell-site records is a search within the meaning of the Fourth Amendment. *See Carpenter*, 138 S. Ct. at 2220. Because acquisition of CSLI is a search, the Government must generally obtain a warrant supported by probable cause before acquiring such records. *See Carpenter*, 138 S. Ct. at 2221; *see also United States v. Beverly,* 943 F.3d 225, 229 (2019), *cert den.*, 140 S. Ct. 2550 (U.S. 2020). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *See Carpenter*, 138 S. Ct. at 2221 (quoting *Riley v. California,* 573 U.S. 373, 382 (2014)).

The Government contends in its brief that, on February 13, 2020, an arrest warrant was issued for Carter, charging him with possession of a firearm by a convicted felon. On February 15, 2020, the United States Marshals Service Violent Offender Task Force ("USMS VOTF") applied for and was granted a search warrant by a state judge to conduct electronic surveillance on Carter's personal cell phone.[4]

Pursuant to that surveillance, Carter's location was tracked and his vehicle was stopped in Louisiana as he travelled from Houston, Texas to Louisiana. The

---

[4] Carter points out that the Government failed provide a copy of that search warrant in its discovery materials. Because of that, Carter disputes the Government's assertion that the USMS VOTF: (1) obtained a search warrant; or (2) that the warrant was supported by probable cause.

The Government contends in its Response that it has since obtained a copy of that search warrant and produced it to Defendants.

Carter did not disagree or otherwise pursue or maintain this argument in his reply. ECF No. 80.

traffic stop was based on reasonable suspicion, from the CSLI obtained pursuant to a search warrant, that Carter was inside the vehicle.

The search of the vehicle that took place incident to Carter's arrest was also lawful.[5] *See Arizona v. Gant,* 556 U.S. 332, 343-44 (2009) ("[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."). Moreover, the Government's brief states that the arresting officers smelled the odor of marijuana emanating from the vehicle. ECF No. 78 at 15. The odor of marijuana establishes probable cause for a warrantless search of the vehicle. *See United States v. Ogden*, 572 F.2d 501, 502 (5th Cir. 1978), *cert. den.,* 439 U.S. 979 (1978) (stating that law enforcement's "identification of the odor of marijuana is enough to support probable cause to search" and "[n]o warrant is required for the search of an automobile under such circumstances"); *see also United States v. Coleman*, 540 F. Supp. 3d 596, 612 (S.D. Miss. 2021).

For these several reasons, Carter's Motion to Suppress (ECF No. 66) the February 15, 2020 search should be DENIED.

### D. <u>Carter has not shown the February 17, 2020 search was unlawful.</u>

Carter also argues that the subsequent search of his vehicle on February 17, 2020 was also unlawful because the February 15, 2020 search was unlawful.

---

[5] The Government contends that large quantities of drugs and three cell phones were found in the vehicle during the February 15, 2020 search. ECF No. 78 at 8. Additional drugs and phones were found during the February 17, 2020 search. ECF No. 78 at 9.

Because that search took place pursuant to a search warrant (the validity of which Carter has not attacked), it is presumed to have been supported by probable cause. Carter has not shown the February 17, 2020 search was invalid.

Therefore, Carter's Motion to Suppress (ECF No. 66) the February 17, 2020 search should also be denied.

### E.  Jones does not have standing to contest the search of Carter's CSLI.

Jones's Motion to Suppress (ECF No. 65) is based on the "presumptively warrantless location tracking" of Carter's cell phone. Jones does not have standing to assert a violation of Carter's Fourth Amendment rights.

"The Fourth Amendment's exclusionary rule does not operate vicariously. . . . A criminal defendant seeking suppression must show that 'his own Fourth Amendment rights [were] infringed by the search [or] seizure which he seeks to challenge.'" *See United States v. Beaudion,* 979 F.3d 1092, 1097 (5th Cir. 2020) (moving to suppress the CSLI obtained from the phone of a passenger in his vehicle) (citing *Byrd v. United States,* 138 S. Ct. 1518, 1526 (U.S. 2018)).

A defendant seeking to suppress evidence must show not only that the police committed an unreasonable search or seizure, but also that the search or seizure infringed a Fourth Amendment interest of the defendant himself. *See Beaudion,* 979 F.3d at 1099. A defendant can establish this personalized interest in one of two ways: (1) he may object to the physical intrusion of a constitutionally protected area in which he has a property interest; or (2) he may object to government action that

13

violates a reasonable expectation of privacy in the place searched. *See Beaudion,* 979 F.3d at 1099.

The place searched was Carter's cell phone. CSLI provides GPS coordinates of a person's phone and the person's corresponding location. *See Beaudion,* 979 F.3d at 1099. Jones has not alleged any fact to show he had a property or privacy interest in Carter's cell phone. Instead, he argues only that the officers did not obtain the CSLI pursuant to a search warrant. As discussed above, that argument is erroneous; there was a search warrant.

Because Jones did not have a protected property or privacy interest in Carter's cell phone, he does not have standing to raise a Fourth Amendment argument with respect to the search of that phone for CSLI. Jones's Motion to Suppress (ECF No. 65) should therefore be denied.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Jones's Motion to Suppress Evidence and Requesting an Evidentiary Hearing (ECF No. 65) be DENIED.

IT IS FURTHER RECOMMENDED that Carter's two Motions to Suppress Evidence and Requesting an Evidentiary Hearing (ECF Nos. 66, 67) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), all parties aggrieved by this Report and Recommendation have five (5) calendar days from service of this Report and Recommendation to file specific, written objections

14

with the Clerk of Court. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana on this __2nd__ day of June 2022.

                                                                                     _____
                                                                                     Joseph H.L. Perez-Montes
                                                                                     United States Magistrate Judge